## HENRY EPHRAIM v. THEODORE GARLICK.

1. **PRACTICE**; *Review of Judgment; Error.* To authorize the supreme court to review a judgment of the district court error must appear on the record, and not be left to be sought by strained inferences from obscure and uncertain statements.

2. ———— *Uncertain and Indefinite Statements.* Land described as "Cherokee land" is not necessarily land ceded to the Cherokee Nation of Indians by the treaty of December, 1835.

3. ———— A description of a tract of land as the S.E.¼, Sec. 6, Township 35 south, of Range 20 east, does not enable the court to say that the tract so described is within the limits of the lands ceded to the Cherokees by the said treaty of 1835.

### *Error from Labette District Court.*

ACTION for unlawful and forcible detainer, commenced by *Garlick,* as plaintiff, before a justice of the peace. The complaint was in writing, and under oath, as required by § 162 of the justices' act. So much of said complaint as is material here, (after the title, venue, etc.,) is as follows:

"The said plaintiff doth hereby make his complaint upon oath against the said Henry Ephraim defendant, for that the said defendant did on or about the first day of October 1871, unlawfully and forcibly, and with a strong hand detain from the possession of the plaintiff the following described premises, situate in the town of Hackberry, in the county of Labette, and described as follows: about 160 acres of land lying and being in a certain tract of land immediately south of the Osage ceded land, so-called, in the state of Kansas, and known as the 'Cherokee Strip,' and bounded on the north by the claim of W. S., on the east by the claim of J. W., on the south by the claim of J. D., and on the west by the claim of L. F., and more particularly described as the S.E.$\frac{1}{4}$ of sec. 6, in township 35 south, of range 20 east, as described in the United States survey of said lands in said county of Labette."

*Ephraim* filed an answer admitting his possession, and alleging that at the date of his occupancy and possession said land was "vacant and unoccupied"—that he had made valuable improvements thereon—"that said land is a portion of land belonging to the Cherokee Nation—that said land is unsurveyed by the United States," and that he settled upon said lands as upon public lands of the United States, etc. The action was removed to the district court by appeal. *Ephraim* there filed a motion to dismiss the action "because said complaint shows that the land mentioned therein is Indian land belonging to Cherokee Nation." Said motion was overruled. Upon trial, at the March Term 1872, *Garlick* had judgment for the restitution of the premises, and *Ephraim* brings the case here on error.

*W. P. Lamb*, for plaintiff in error:

The judgment in this cause should be reversed. The land mentioned in the complaint of the plaintiff belonged to the Cherokee Nation of Indians, and the Indian title had not been extinguished. Cherokee Treaty of Dec. 29th, 1835. (7 U. S. Stat. at Large, 478;) Organic Act of 1854; Act of admission of the State of Kansas, Gen. Stat., pp. 66, 67,

19—10 KAS.

§ 1. And see act of congress of 22d July 1854, relative to settlements made on government lands.

*Ayres & Fox*, for defendant in error:

It is matter of current history and public fame that the Cherokee Nation of Indians voted to accept the provisions of the treaty of 1866 for their benefit as to the "Strip," and its sale, and actually abandoned the land accordingly, under the provisions of that treaty, (said "strip" being that small fraction or strip of the 7,000,000 of acres of land ceded to the Cherokees by the Treaty of 1835, lying north of the 37th parallel of north latitude.) It is equally understood that the state of Kansas and its courts have ever since exercised full jurisdiction to the 37th parallel, including all this "strip." The *locus in quo* in the action fully appeared, as matter of fact, to be in Labette county, and within the jurisdiction of the state courts.

The opinion of the court was delivered by

KINGMAN, C. J.: The plaintiff in error attempted to raise the question of the jurisdiction of the district court, by a motion to dismiss. The same point is raised on one of the instructions given by the court. If the land was a part of the lands belonging to the Cherokee Nation of Indians by the treaty of December 1835, (7 Stat. at Large, 478,) then there can be no doubt that the court had no jurisdiction, for the 5th article of that treaty expressly stipulates that the lands in that treaty reserved to the Cherokees "shall in no future time, without their consent, be included within the territorial limits or jurisdiction of any state or territory." But we cannot determine from the petition that the lands in controversy are a part of the lands so ceded to the Cherokees. We cannot say so from the description of them in the petition; and there is no evidence of any kind preserved. There may be land known generally as "Cherokee lands" that is not a part of the lands ceded to that tribe by that treaty; therefore the use of the descriptive phrase, "Cherokee lands," in the

petition, is not at all conclusive that the land is part or parcel of that ceded by that treaty. Neither is the description of the land by the number of the section, township, and range, such a description as enables us to say with certainty that the land is included within the limits of the lands ceded by that treaty. Whether the land was so situated was a question of fact to be found on proof, or admitted in the pleadings; and neither course was taken in this case. Not being able to say that there was error, the judgment is affirmed.

All the Justices concurring.